SHOTWELL *v.* PHYSICIANS' STATIONERY CO.

1. SPECIFIC PERFORMANCE—CONTRACTS—EVIDENCE—SUFFICIENCY.
   In a suit for the specific performance of an oral contract to give plaintiff one-quarter of the capital stock in defendant company if he would continue in its employ for one year, evidence *held*, insufficient to establish the contract relied upon.

2. FRAUDS, STATUTE OF—CONTRACTS—PERFORMANCE.
   An oral contract to give plaintiff one-quarter of the capital stock of defendant company if he would continue in its employ for two years was void under the statute of frauds, and where he worked only one year there was no such performance as the law requires to take it out of the statute.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted October 10, 1922. (Docket No. 37.) Decided December 5, 1922.

Bill by Russell E. Shotwell against the Physicians' Stationery Company and others for the specific performance of a contract. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Max Hulett*, for plaintiff.

*Lodge & Brown*, for defendants.

McDONALD, J. The bill in this case is filed for the specific performance of an alleged oral agreement to transfer and deliver to the plaintiff a portion of the capital stock of the defendant company. The Physicians' Stationery Company was organized in 1916. Previous to that time the business had been owned and managed by defendant Holland D. Cottrell, and the plaintiff and defendant Behrman were his employees. It is plaintiff's claim that it was agreed that when the organization was perfected, he and Behrman should have each a quarter interest in the business, but that he only received two shares of the stock, which he reluctantly accepted. Behrman received a quarter interest and was elected treasurer of the company. The plaintiff became secretary. In the summer of 1917, Behrman enlisted in the navy, resigned the treasurership and plaintiff took his place. The day following plaintiff either quit or was discharged, and was not thereafter connected with the business until the day after Thanksgiving in November, 1917. He claims that he then went to work under an oral agreement with defendant Cottrell that if he would continue in his employment for one year, that he (Cottrell) would then transfer and assign to him sufficient stock in the company to make his interest equal to one-quarter of the capitalization. The defendant Cottrell admits that he made an oral agreement with the plaintiff to give him the stock, but says that the conditions were that plaintiff was to resume work, and if he could make good, in two years' time he would give him a quarter interest in the business. At the expiration of one year, plaintiff demanded a delivery of the stock, and, not receiving it, resigned and later brought this suit. The disputed

questions involve the terms of the contract and the manner of its performance by the plaintiff. On the hearing the circuit judge determined that the agreement claimed by plaintiff was not made out, and dismissed his bill. From the decree entered plaintiff has appealed.

The question presented by the record is entirely one of fact. The evidence on the main issue is mostly from the parties and is very much in conflict. It is not always an easy matter to assign any reason for believing one witness and discrediting another. But in this case we are aided by the fact that it is highly improbable that Mr. Cottrell, who had sufficient ability to build up and carry on this business, should make such a disadvantageous contract as claimed by the plaintiff. The contract as testified to by the plaintiff is as follows:

"He said if I would come back for one year that he would carry out all promises that he had made to me in the first place, and give me one-quarter interest."

A one-quarter interest in the business meant 63 shares of stock. The stock was not on the market. It was held by those actively engaged in the business. If plaintiff's version of the contract is to be accepted, it means that for one year's service he would receive in addition to a going wage of $40 per week, a quarter interest in the business or 63 shares of the company's stock. The record does not furnish any reason why Cottrell should make a contract which would permit the plaintiff, after serving one year at full pay, to walk out with 63 shares of the stock. The consideration moving to Cottrell would be so slight when compared with the very substantial benefits which plaintiff would receive as to raise a serious doubt that any such an agreement was made by the parties. It would be most unusual. The record shows that

Cottrell stuttered and was afflicted with some nervous trouble, but it nowhere appears that he was simple minded and easily over-reached in business transactions. It is much easier to believe that the contract was as defendant Cottrell claims. He testified:

"I told her (plaintiff's mother), or made her an offer, in which if Russell would come back and take up Jack's duties, and if he could make good, in two years' time I would give him a quarter interest in the business."

The contract as testified to by the plaintiff contemplates but one year's service. "He said if I would come back for one year," etc. The contract claimed by Cottrell contemplates permanent connection with the business if he made good. That was the reason for the gift of a one-quarter interest in the business. The evidence shows that Mr. Cottrell had built up this business from a small beginning, that he desired to retain control of it, and that he did not want plaintiff to have so much stock unless he remained actively participating in the business. In a writing made in February, 1919, when the question of plaintiff securing stock was being discussed, Cottrell said:

"All I want from you is some reasonable protection. In issuing this stock, I am giving away practically my control in the business in so far that both you and J. B. should turn out to be dead ones, in so far as active participation, I would be giving the business away."

It is apparent that Mr. Cottrell always intended that the stock should be held by those actively engaged in the business of the company, and that he never contemplated giving the plaintiff a quarter of it in addition to the regular wages for one year's service. We agree with the conclusions of the circuit judge that the plaintiff has failed to establish the contract recited in his bill of complaint. The contract which

defendants concede was made with the plaintiff is void as coming within the statute of frauds; and there was no such performance as the law requires to take it out of that statute.

The decree of the circuit judge is affirmed, with costs to defendants.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.  MOORE, J., did not sit.